UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE FOLLOWING FACEBOOK USERS:<br><br>Julian Tail, Facebook Username "Julian Tail," Facebook URL facebook.com/Julian.tail.7, Facebook ID 100032022269789;<br>Julian Tail, Facebook Username "Julian Tail," Facebook URL facebook.com/profile.php?id=100015493444046;<br>Julian Tail, Facebook Username "Julian Tail," Facebook URL facebook.com/profile.php?id=100014687742386;<br>Julian Tail, Facebook Username "Julian Tail," Facebook URL facebook.com/profile.php?id=100014501209164;<br>Julian Tail, Facebook Username "Julian Tail," Facebook URL facebook.com/profile.php?id=100012869448519. | **Redacted**<br><br>Case No. 5:20-MJ-02<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

State of South Dakota   )
                        ) ss
County of Pennington    )

I, Kevin J. Seymore, Special Agent of the Federal Bureau of Investigation (FBI) being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct

investigations of and to make arrests for offenses enumerated in 18 U.S.C. §§ 2243 and 1153.

2. I have been employed as a Special Agent with the FBI since May 2018. I am currently assigned to a criminal squad with the Minneapolis Division of the FBI, Rapid City Resident Agency, and investigate a multitude of federal criminal violations, including crimes in Indian country on the Pine Ridge Reservation.

3. The information set forth below is based upon my knowledge of an investigation conducted by the FBI and the investigation of other law enforcement agents and officers. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

4. I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 1153, 2243(a), and 2246(2)(A), Sexual Abuse of a Minor (hereinafter "Target Offense"), to require Facebook to disclose to the government records and other information in its

2

possession, described in Attachment B, pertaining to the subscribers or customers associated with the User IDs described in Attachment A.

5.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.  Based on my training and experience and the facts as set forth in this affidavit, I believe there is probable cause to believe that evidence of a violation of the Target Offense, is present in the accounts of

- Julian Tail, Facebook screen name "Julian Tail," Facebook URL facebook.com/Julian.tail.7, Facebook ID 100032022697891;
- Julian Tail, Facebook screen name "Julian Tail," Facebook URL facebook.com/profile.php?id=100015493444046;
- Julian Tail, Facebook screen name "Julian Tail," Facebook URL facebook.com/profile.php?id=100014687742386;
- Julian Tail, Facebook screen name "Julian Tail," Facebook URL facebook.com/profile.php?id=100014501209164;
- Julian Tail, Facebook screen name "Julian Tail," Facebook URL facebook.com/profile.php?id=100012869448519,

(hereinafter "Target Accounts"). I believe there is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B.

**PROBABLE CAUSE**

7.  On September 24, 2018, your affiant spoke with Julian Tail (DOB ███████, a then-20 year-old male who resided in a trailer owned by his

3

grandfather, Eli Tail, Sr., and located north of Evergreen Housing on BIA Route 27, approximately five miles north of Porcupine, South Dakota. At the time of the interview, Tail was in tribal custody at the Pine Ridge Adult Offender Facility.

8. Tail told your affiant that for a period of approximately two weeks prior to September 21, 2018, Tail "talked" via Facebook Messenger with S.W. During these conversations, Tail and S.W. agreed to meet at Tail's residence. Tail claimed he believed S.W. to be 17 years old when the meeting was scheduled.

9. On September 21, 2018, between 8:00 AM and 12:00 PM, S.W. left her mother's residence in Wounded Knee, South Dakota, and hitchhiked to the residence owned by Eli Tail, Sr., where Julian Tail lived.

10. Tail informed your affiant that upon meeting S.W. in person, Tail believed S.W. to be younger than 17 years of age, and estimated her age to be 15 or 16.

11. Tail informed your affiant that between September 21, 2018, and September 23, 2018, Tail and S.W. engaged in at least three acts of non-forcible penile-vaginal sexual intercourse, with penetration.

12. Tail informed your affiant that after he had intercourse with S.W., Tail received a message via Facebook Messenger from M.W., a 17 year-old sister of S.W., asking Tail if S.W. was at Tail's residence and informing Tail that S.W. was only 13 years of age.

13. On September 27, 2018, M.W. confirmed with your affiant that she had sent Tail the aforementioned message on September 21, 2018.

14. M.W. told your affiant that Tail had previously messaged M.W. via Facebook Messenger asking M.W. to hang out with Tail, similar to Tail's online interaction with S.W. M.W. said she and her friends had "blocked" Tail several times on multiple different Facebook accounts, and that M.W. knew that Tail "talks to little girls." M.W. indicated when M.W. would "block" Tail on one account, he would use a different account to continue messaging her.

15. During a forensic interview with S.W. on September 27, 2018, S.W. confirmed that she had "talked" to Julian Tail via Facebook for a few weeks prior to meeting Tail in person. S.W. told the interviewer that she and Tail accessed Facebook via Tail's phone while she and Tail were together at Tail's residence.

16. S.W. remained overnight at Tail's residence on September 21 and September 22, 2018.

17. On September 23, 2018, S.W.'s mother, Michelle Lau, and tribal police officer Stacy Sargent removed S.W. from the residence at approximately 2:00 P.M. Officer Sargent took Tail into custody and transported Tail to the Pine Ridge Adult Offender Facility.

18. Tail's sister, Georgene Tail, and grandmother, Carolyn Tail, told your affiant that while they were at the residence, S.W. spent nearly all of her time in Tail's bedroom. Georgene and Carolyn said they did not realize S.W. had spent the entire weekend at the residence until S.W. was removed from the residence.

19. Tail is an enrolled member of the Oglala Sioux Tribe.

20. Your affiant previously obtained a search warrant for Julian Tail's Facebook account with Username "Julian Tail", Facebook User ID 100022439420087, Facebook URL facebook.com/julian.tail.142; and for S.W.'s Facebook account, with Username "Marie S Rose (babygirl)", Facebook User ID 100027712811647, Facebook URL facebook.com/marie.rose.98.

21. Data obtained pursuant to that search warrant confirm that Julian Tail and S.W. became Facebook "friends" on September 6, 2018. Julian Tail and S.W. conversed using Facebook for the next several weeks prior to September 21, 2018. Julian Tail carried on conversations with multiple individuals on that particular Facebook account during the same relevant period that he conversed with S.W.

22. Data obtained pursuant to the search warrant also showed that Julian Tail's account "julian.tail.142" was deleted on or about October 18, 2018.

23. On September 23, 2018, at 00:51:08 UTC, S.W. set the Facebook nickname for Julian Tail to "Baby love" and set the Facebook emoji for Julian Tail to a heart symbol.

24. Your affiant is aware that on January 30, 2019, Julian Tail made his initial appearance for a violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2)(A) before the Honorable United States Magistrate Judge Daneta Wollmann. At that hearing, Judge Wollmann advised Julian Tail he was to have no social media use whatsoever during the pendency of his case. Julian Tail was released on

conditions of pretrial release until August 16, 2019, when Judge Wollmann revoked Tail's pretrial release for violating the conditions of his pretrial release.

25. At some point after Julian Tail's initial appearance on January 30, 2019, your affiant checked Julian Tail's social media presence on Facebook, and found no active accounts.

26. Between November 27, 2019, and December 17, 2019, your affiant discovered five active Facebook accounts of Julian Tail. One displays screen name "Julian Tail," username "julian.tail.7," and user ID 100032022697989. A second displays screen name "Julian Tail" and user ID 100014687742386. A third displays screen name "Julian Tail" and user ID 100015493444046. A fourth displays screen name "Julian Tail" and user ID 100014501209164. A fifth displays screen name "Julian Tail," username julian.tail, and user ID 100012869448519.

27. The profile picture visible to the public on each of these five Facebook accounts is a photograph of Julian Tail, with whom your affiant is familiar. Your affiant submitted preservation requests to Facebook to preserve the contents of each of these five Facebook accounts.

28. Posts from the "julian.tail.7" Facebook account include publicly visible posts dated May 18, 2019; May 20, 2019; May 21, 2019; May 22, 2019; May 24, 2019; June 2, 2019; June 3, 2019; June 9, 2019; June 25, 2019; June 26, 2019; July 25, 2019; August 5, 2019; and August 10, 2019. All of these

dates are dates upon which Julian Tail was out of custody on pretrial release in this case and was prohibited from using social media.

29. Your affiant's investigation of this case indicates Julian Tail used Facebook and Facebook Messenger to contact the alleged victim, and had a habit of using multiple Facebook accounts to contact underage girls. The undersigned previously sought and obtained a search warrant for Facebook account information for Julian Tail's "julian.tail.142" account; however, the undersigned did not previously have sufficient information about the additional Facebook accounts Julian Tail allegedly used to contact females and continue messaging persons who "blocked" certain of his Facebook accounts.

## REQUEST FOR SEALING

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be permanently sealed in that the search warrant is part of an investigation regarding a juvenile victim. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize that investigation.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

8

government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### **REQUEST/JUSTIFICATION FOR ORDER OF NONDISCLOSURE**

32. The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the following five Facebook accounts: (1) Facebook user Julian Tail, having screen name "Julian Tail," username "julian.tail.7," and user ID 100032022697989; (2) Facebook user Julian Tail, with screen name "Julian Tail" and user ID 100014687742386; (3) Facebook user Julian Tail, having screen name "Julian Tail," and user ID 100015493444046; (4) Facebook user Julian Tail, having screen name "Julian Tail" and user ID100014501209164; and (5) Facebook user Julian Tail, having screen name "Julian Tail," username julian.tail, and user ID100012869448519. The United States is seeking this search warrant for user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A). Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber. Under § 2705(b), the United States may apply to the court for an order commanding Facebook not

to notify the subscriber of the existence of the search warrant. The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3). The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

## CONCLUSION

33. Based on the forgoing, I request that the Court issue the proposed search warrant.

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated: 1-2-2020

Kevin Seymore, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to in my presence this 2nd day of January, 2020.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

11

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the following Facebook accounts:

(1) Facebook user Julian Tail, having screen name "Julian Tail," username "julian.tail.7," and user ID 100032022697989;

(2) Facebook user Julian Tail, with screen name "Julian Tail" and user ID 100014687742386;

(3) Facebook user Julian Tail, having screen name "Julian Tail," and user ID 100015493444046;

(4) Facebook user Julian Tail, having screen name "Julian Tail" and user ID 100014501209164; and

(5) Facebook user Julian Tail, having screen name "Julian Tail," username julian.tail, and user ID 100012869448519,

that are stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I. Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including for (1) Facebook user Julian Tail, having screen name "Julian Tail," username "julian.tail.7," and user ID 100032022697989; (2) Facebook user Julian Tail, with screen name "Julian Tail" and user ID 100014687742386; (3) Facebook user Julian Tail, having screen name "Julian Tail," and user ID 100015493444046; (4) Facebook user Julian Tail, having screen name "Julian Tail" and user ID100014501209164; and (5) Facebook user Julian Tail, having screen name "Julian Tail," username julian.tail, and user ID 100012869448519, full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by those user IDs and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that the accounts are or were a "fan" of;

(j) All past and present lists of friends created by the accounts;

2

(k) All records of Facebook searches performed by the accounts;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1470, Transfer of Obscene Material to Minor, from August 2017, until the date of the warrant, for the user IDs identified on Attachment A.